305 So.2d 172 (1974)
Mary Alice FIRESTONE, Petitioner,
v.
TIME, INC., Respondent.
No. 44207.
Supreme Court of Florida.
December 11, 1974.
*173 Robert M. Montgomery, Jr. and Edna L. Caruso, West Palm Beach, of Howell, Kirby, *174 Montgomery, D'Aiuto, Dean & Hallowes, West Palm Beach, for petitioner.
William S. Frates and Larry S. Stewart, of Frates, Floyd, Pearson, Stewart, Proenza & Richman, Miami, and Harold R. Medina, Jr., of Cravath Swaine & Moore, New York City, for respondent.
PER CURIAM.
This cause is before us on certiorari granted to review the decision of the District Court of Appeal, Fourth District, in Time, Inc. v. Firestone, opinion filed June 20, 1973, reported at 279 So.2d 389 (Fla. App. 1973), which purportedly conflicts with Coogler v. Rhodes, 38 Fla. 240, 21 So. 109 (1897), Montgomery v. Knox, 23 Fla. 595, 3 So. 211 (1887), Myers v. Hodges, 53 Fla. 197, 44 So. 357 (Fla. 1907), Tip Top Grocery Co. v. Willner, 135 Fla. 518, 186 So. 219 (1938), Miami Herald Pub. Co. v. Brown, 66 So.2d 679 (Fla. 1953), McCormick v. Miami Herald Publish. Co., 139 So.2d 197 (Fla.App. 1962), and Hammond v. Times Publishing Co., 162 So.2d 681 (Fla.App. 1964). We have jurisdiction pursuant to Article V, Section 3(b)(3), Florida Constitution, 1973.
Petitioner, herein, seeks review of the latest in a series of District Court opinions relative to her libel suit against respondent for publication of the following news item about petitioner:
"Divorced. By Russell A. Firestone, Jr., 41, heir to the tire fortune. Mary Alice Sullivan Firestone, 32, his third wife; a onetime Palm Beach schoolteacher; on the grounds of extreme cruelty and adultery; after six years of marriage; one son; in West Palm Beach, Fla. The 17-month intermittent trial produced enough testimony of extramarital adventures on both sides, said the judge, `to make Dr. Freud's hair curl'." (emphasis supplied)
The decree of divorce was granted not on grounds of adultery but rather was granted on grounds of extreme cruelty. In the final judgment granting the divorce, the trial court found the equities to be with Mrs. Firestone and awarded her substantial alimony. Additionally, the trial court although stating that enough testimony had been introduced to make Dr. Freud's hair curl, specifically stated in the final judgment that the court was inclined to discount much of the testimony as unreliable.
After publication of the aforestated news item, petitioner demanded in writing a retraction of the article and alleged that it was false, malicious and defamatory. The respondent declined to retract.
Complaint was thereafter filed by petitioner alleging that respondent had maliciously prepared, composed, published and distributed the above-described defamatory article. Summary judgment was entered by the trial court in favor of respondent. However, upon appeal of this summary judgment to the District Court of Appeal, Fourth District, that court, finding that there were genuine issues of material fact to be resolved by the trier of fact, including, inter alia, the question of malice, reversed and remanded the cause to the trial court. Firestone v. Time, Inc., 231 So.2d 862 (Fla.App. 1970), cert. denied 237 So.2d 754 (Fla.). Upon remand, after trial by jury, verdict having been entered in favor of petitioner and against respondent, in the sum of $100,000, the trial court entered final judgment ordering that petitioner recover said sum from respondent.
Upon appeal, the District Court of Appeal, Fourth District, reversed the judgment primarily on the ground that the divorce was an event of great public interest within the rationale of New York Times v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), and that there was no malice on the part of Time, Inc. shown as required for recovery under the doctrine of New York Times v. Sullivan, supra.
This Court granted certiorari and reversed the above decision of the District Court on the basis that the publication did *175 not come within the New York Times doctrine, specifically stating:
"In sum, the Firestone divorce action was unquestionably newsworthy, but reports thereof were not constitutionally protected as being matters of real public or general concern." Firestone v. Time, Inc., 271 So.2d 745 (Fla. 1972).
However, this Court did not decide the remaining points raised by respondent, but rather remanded to the District Court, stating:
"Respondent argues essentially the same points here, with the exception of the passion and prejudice point, rejected by the District Court. However, we do not decide these points, other than the constitutional one, nor do we concede merit therein. Rather, we deem it more propitious and proper to remand the cause to the District Court which has the entire record before it and is better situated initially to pass on the full merit of the remaining points raised."
Upon remand to reconsider the remaining points raised on appeal, in a decision entitled "Upon Supreme Court Mandate," Time, Inc. v. Firestone, 279 So.2d 389 (Fla.App. 1973), the District Court stated that it assumed that all litigants understood that all points raised on appeal had been adjudicated in its prior decision. Noting that the litigants are not entitled to a written opinion on each and every point, the District Court, by way of confirmation of its initial decision reported at 254 So.2d 386, adjudicated without explanation that Time, Inc.'s Points I, II, IV, and VI, as specifically delineated in its decision, have merit sufficient to cause reversal of the appealed judgment and entry of judgment for Time, Inc.
We cannot agree with the decision of the District Court which reverses the judgment of the trial court. As previously stated herein, the truth is that the divorce was not granted on grounds of adultery and there was no express finding in the final judgment of divorce that either of the parties was guilty of marital infidelity. This Court in Firestone v. Time, Inc., 271 So.2d 745 (Fla. 1972), in a pertinent footnote expressly stated:
"In reviewing the divorce proceeding on certiorari, this court expressly determined that the trial judge `did not find the wife guilty of adultery.' Rather, it was pointed out that the divorce was granted for lack of `domestication,' in the language of the trial judge, which of course was not one of the statutory grounds at the time of divorce. We affirmed the decree, nonetheless, but on the ground of `extreme cruelty,' the record having fully supported such conclusion and thus necessitating an affirmance. Firestone v. Firestone (Fla. 1972), 263 So.2d 223."
The appropriate statutory procedure was followed by petitioner in requesting retraction of the defamatory publication which is the subject of this suit, Sections 770.01 and 770.02, Florida Statutes, Ross v. Gore, 48 So.2d 412 (Fla. 1950), but respondent elected not to retract and must stand upon the accuracy of its statements. Walsh v. Miami Herald Publishing Co., 80 So.2d 669 (Fla. 1955). The statement that the divorce was granted on grounds of adultery is totally inaccurate.
The false accusation of a woman of adultery is libelous per se. Layne v. Tribune Co., 108 Fla. 177, 146 So. 234 (1933), Harriss v. Metropolis Co., 118 Fla. 825, 160 So. 205 (1935), Sharp v. Bussey, 137 Fla. 96, 187 So. 779 (1939), 20 Fla.Jur. Libel and Slander, Section 20, 50 Am.Jur.2d Libel and Slander, Section 60, Restatement of the Law of Torts, Chapter 24, Section 569f.[1] Words which amount to libel per se import damages and malice and *176 are actionable in and of themselves without allegation or proof of special damages. Briggs v. Brown, 55 Fla. 417, 46 So. 325 (1908), Johnson v. Finance Acceptance Co. of Georgia, 118 Fla. 397, 159 So. 364 (1935), Cooper v. Miami Herald Pub. Co., 159 Fla. 296, 31 So.2d 382 (1957), Campbell v. Jacksonville Kennel Club, 66 So.2d 495 (Fla. 1953). Relative to the presumption of recoverable compensatory damages, this Court stated in Commander v. Pedersen, 116 Fla. 148, 156 So. 337 (1934):
"The law applicable to the case under consideration appears to be stated in 17 R.C.L. 263, et seq., as follows:
"...
"... In the case of words actionable per se their injurious character is a fact of common notoriety, established by the general consent of men, and the court consequently takes judical [sic] notice of it. They necessarily import damage, and therefore, in such cases general damages need not be pleaded or proved ..., and special damage need not be shown to sustain the action. Moreover, malice is presumed as a matter of law in such cases... ."
The Supreme Court of the United States in Gertz v. Welch, Inc., 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789, opinion decided June 25, 1974, has recently stated that,
"It is therefore appropriate to require that state remedies for defamatory falsehood reach no farther than is necessary to protect the legitimate interest involved. It is necessary to restrict defamation plaintiffs who do not prove knowledge of falsity or reckless disregard for the truth to compensation for actual injury. We need not define `actual injury,' as trial courts have wide experience in framing appropriate jury instructions in tort action. Suffice it to say that actual injury is not limited to out-of-pocket loss. Indeed, the more customary types of actual harm inflicted by defamatory falsehood include impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering. Of course, juries must be limited by appropriate instructions, and all awards must be supported by competent evidence concerning the injury, although there need be no evidence which assigns an actual dollar value to the injury."
Sub judice, the trial judge properly instructed the jury that if libel is proven by the greater weight of the evidence which caused actual damages to the plaintiff, they should award plaintiff an amount of money that will fairly and adequately compensate her for such damages, and instructed that "It is only damages which are a direct and natural result of the alleged libel which may be recovered. If you find the plaintiff is entitled to recover damages, you may consider any shame, mortification, mental anguish, or hurt feelings experienced in the past or to be experienced in the future, if any, which you find from the evidence. There is no exact standard for fixing the compensation to be awarded on account of such damages. Any such award should be fair and just in light of the evidence." (emphasis supplied) The jury heard the testimony and considered the evidence before it and the factors enumerated in the instruction of the trial judge which are the same as those set out by the Supreme Court of the United States in Gertz, supra, and upon the evidence decided that a just and fair award for the damages suffered by petitioner would be $100,000. This award is supported by competent evidence concerning the injury. As *177 aforestated, the Supreme Court of the United States in Gertz, supra, recognized that there need be no evidence which assigns an actual dollar value to the injury.
We must also emphasize that the trial court specifically instructed the jury that,
"I instruct you that there can be no recovery in this case if you find from the greater weight of the evidence that the article as published had no different effect than the divorce judgment in the case of Firestone v. Firestone, Case No. 64 C 2790C. McCormick v. Miami Herald Publishing Co., 139 So.2d 197 (2nd DCA 1962)."
Therefore, to reach a verdict for petitioner, the jury must necessarily have determined that the article did have a different effect than the reading of the divorce judgment by the public. In McCormick v. Miami Herald Publishing Company, 139 So.2d 197 (Fla.App.2, 1962), the court stated that a workable test is whether the libel as published would have a different effect on the mind of the reader from that which the pleaded truth would have produced. See also, Hammond v. The Times Publishing Co., 162 So.2d 681 (Fla.App.2, 1964). Evidently, the jury determined sub judice that the article in question would have a different effect.
In Firestone v. Time, Inc., 271 So.2d 745 (Fla. 1972), relative to the statement herein involved, this Court explained:
"If not constitutionally protected, and again assuming a defamatory falsehood, then the publication herein renders respondent amenable under the Florida common law on the subject, to-wit: that a published defamatory falsehood which is libelous per se, unless otherwise privileged, is actionable absolutely and no malice need be shown  truth being the only defense."
Publications of judicial proceedings under the laws of Florida are only qualifiedly privileged if they are fair and impartial and also accurate in regard to all material matters. Shiell v. Metropolis Co., 102 Fla. 794, 136 So. 537 (1931), Walsh v. Miami Herald Publishing Co., supra. If a statement is qualifiedly privileged and is made without malice, then no cause of action accrues. Teare v. Local Union No. 295 of United Assn. of Journeymen and Apprentices of Plumbers & Pipefitters, etc., 98 So.2d 79 (Fla. 1957).
Sub judice, the trial judge properly submitted the question of fairness and accuracy of the publication on material matters and the question of malice or reckless disregard on the part of respondent in publishing said article to the jury. Quoting with approval from Age-Herald Publishing Co. v. Waterman, 202 Ala. 665, 81 So. 621, this Court declared in Shiell v. Metropolis Co., supra, as follows:
"A fair and accurate report may be made of a judicial proceeding either by reporting it literally and completely, or by giving a more or less condensed summary. And in case of a partial or condensed report its fairness and accuracy with respect to the particular question in hand must in general be determined by the jury. Parsons v. Age-Herald Publishing Co., 181 Ala. 439, 449, 61 So. 345. In the instant case it was clearly a jury question."
See also: Metropolis Co. v. Croasdell, 145 Fla. 455, 199 So. 568 (1941), Myers v. Hodges, 53 Fla. 197, 44 So. 357 (Fla. 1907), Coogler v. Rhodes, 38 Fla. 240, 21 So. 109 (1897), Diplomat Elec. Inc. v. Westinghouse Elec. Supply Co., 430 F.2d 38 (5th Cir.1970), Morgan v. Dunn & Bradstreet, Inc., 421 F.2d 1241 (5th Cir.1970).
Careful examination and consideration of the record discloses that the judgment of the trial court is correct and should *178 have been affirmed on appeal to the District Court.
Furthermore, this erroneous reporting is clear and convincing evidence of the negligence in certain segments of the news media in gathering the news. Gertz v. Welch, Inc., supra. Pursuant to Florida law in effect at the time of the divorce judgment (Section 61.08, Florida Statutes), a wife found guilty of adultery could not be awarded alimony. Since petitioner had been awarded alimony, she had not been found guilty of adultery nor had the divorce been granted on the ground of adultery. A careful examination of the final decree prior to publication would have clearly demonstrated that the divorce had been granted on the grounds of extreme cruelty, and thus the wife would have been saved the humiliation of being accused of adultery in a nationwide magazine. This is a flagrant example of "journalistic negligence."
Accordingly, the decision of the District Court is quashed and the cause is remanded with directions to reinstate the jury verdict and final judgment thereon in favor of petitioner.
It is so ordered.
ADKINS, C.J., and ROBERTS, BOYD and DEKLE, JJ., concur.
OVERTON, J., dissents with opinion.
ERVIN, J., dissents.
OVERTON, Justice (dissenting).
I dissent. In my opinion, there is no conflict jurisdiction. The District Court, in reversing the trial court, properly applied McCormick v. Miami Herald Publishing Company, 139 So.2d 197 (Fla.App. 1962), and Hammond v. Times Publishing Company, 162 So.2d 681 (Fla.App. 1954).
NOTES
[1] Not only does the statement that a woman has committed adultery impute unchastity but furthermore it imputes to another conduct constituting a criminal offense. Section 798.01, Florida Statutes, provides: "Living in open adultery.  Whoever lives in an open state of adultery shall be guilty of a misdemeanor of the second degree, punishable as provided in § 775.082 or § 775.083. Where either of the parties living in an open state of adultery is married, both parties so living shall be deemed to be guilty of the offense provided for in this section."